125 Pa. Commonwealth Ct. 114 (1989)
557 A.2d 1112
Commonwealth of Pennsylvania, Petitioner
v.
Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.
No. 2344 C.D. 1987.
Commonwealth Court of Pennsylvania.
Argued December 14, 1988.
April 13, 1989.
*115 Argued December 14, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, BARRY, COLINS, PALLADINO, McGINLEY and SMITH.
Patricia J. Goldbank, Assistant Counsel, with her, Frank A. Fisher, Jr., Deputy Chief Counsel, and John D. Raup, Chief Counsel, for petitioner.
*116 Lisa K. Essman, with her, James L. Crawford, for respondent.
Alaine S. Williams, Kirschner, Walters & Willig, for intervenor, Council 13, American Federation of State, County and Municipal Employees.
OPINION BY JUDGE PALLADINO, April 13, 1989:
The Commonwealth of Pennsylvania (Petitioner) appeals from an order of the Pennsylvania Labor Relations Board (Board) finding that Petitioner had committed unfair labor practices by refusing to bargain with American Federation of State, County and Municipal Employees, Council 13, AFL-CIO (Union). Petitioner also appeals from an order of the Board denying its motion for reconsideration.[1] For the reasons set forth below, we affirm.
Petitioner, through the Department of Public Welfare, operated the Polk Center, an institution which provides care for mentally retarded children. Because of a decrease in funding, Petitioner decided to furlough a number of employees effective May 2, 1986, including certain employees represented by the Union. In making its decision as to which employees to furlough, Petitioner attempted to select those positions that did not involve the provision of continuous client care and that would not result in a violation of minimum staffing requirements pursuant to state and federal regulations. Petitioner held *117 labor management meetings with the Union on March 26, 1986 and April 17, 1986, at which time the parties discussed the proposed furloughs.
Prior to the effective date of the furlough, the Union requested Petitioner to negotiate the impact of the furlough on the wages, hours, and working conditions of the affected bargaining unit employees. The Union also sought information from Petitioner regarding which employees would assume the tasks and duties of the furloughed employees. Petitioner responded that the collective bargaining agreement, to which Petitioner and the Union were parties, governed the issue of furloughs and that it (Petitioner) was responsible only for "meet and discuss" sessions. The bargaining unit employees were then furloughed; some of the work previously performed by those employees was assigned to employees of other bargaining units and to managerial employees.
On July 24, 1986, the Union filed unfair labor practice charges with the Board, contending that Petitioner had violated sections 1201(a)(1), (2), (3), (5), and (9) of the Public Employee Relation Act (PERA)[2] by refusing to *118 bargain with the Union over the furloughs and transfer of work out of the bargaining unit. The Union also alleged that Petitioner failed to provide the requested information regarding which employees assumed the duties of the furloughed employees.[3]
After a hearing, the hearing examiner issued a proposed decision and order (PDO) in which he concluded that Petitioner was obligated to bargain over the furloughs and their impact because they were matters of fundamental concern to the employees' interest in wages, hours, and other terms of employment. However, the hearing examiner went on to find that Petitioner had fulfilled its duty to bargain, as evidenced by the provisions of the parties' collective bargaining agreement. Accordingly, the hearing examiner concluded that Petitioner had not committed any unfair labor practices and dismissed the charges.
The Union filed exceptions to the hearing examiner's PDO. By order dated September 15, 1987, the Board sustained the exceptions in part and reversed the hearing examiner's determination that Petitioner satisfied its obligation to bargain with the Union. The Board concluded that although the parties had bargained about the furlough procedures, they had not bargained about the transfer of bargaining unit work to employees outside of that unit. Accordingly, the Board determined that Petitioner had violated sections 1201(a)(1) and (5) of PERA, but had not violated sections 1201(a)(3) and (9) of PERA. The Board ordered Petitioner to cease and desist from refusing to bargain with the Union and directed Petitioner to restore the work, previously performed by the furloughed unit employees, which had been transferred *119 out of the unit. The Board also directed Petitioner to offer the furloughed employees, whose work had been transferred, unconditional reinstatement to their former positions.
Petitioner thereafter filed a motion for reconsideration, seeking a remand to present testimony concerning the parties' bargaining history. In its motion, Petitioner contended that this testimony would establish that, in the course of their contract negotiations, the parties bargained about the issue of transfer of unit work, that the Union demanded that the collective bargaining agreement include a provision relating to this issue, and that Petitioner considered this demand.[4] The Board denied reconsideration by order dated October 7, 1987.
On timely appeal to this court, Petitioner contends that the Board erred in determining that Petitioner was required to bargain with the Union over the furloughs and transfer of unit work to employees outside of the bargaining unit. Petitioner further asserts that even assuming it was required to bargain, it satisfied that obligation, as evidenced by the provisions of the collective bargaining agreement. Finally, Petitioner argues that its proffered testimony on the parties' bargaining history on the issue of transfer was improperly excluded.
Our scope of review of a Board final order is limited to a determination of whether constitutional rights have been violated, an error of law has been committed or whether the findings of fact are supported by substantial evidence. Harbaugh v. Pennsylvania Labor Relations Board, 107 Pa. Commonwealth Ct. 406, 528 A.2d 1024 *120 (1987). In this case, Petitioner has not contended that the findings of fact are unsupported by substantial evidence. Therefore, we need review only the Board's legal conclusions.

DUTY TO BARGAIN
Petitioner first contends that the Board erroneously concluded that it (Petitioner) was required to bargain over the furloughs and transfer of work out of the bargaining unit, alleging that the furloughs and transfer were matters of inherent managerial policy. As support for this argument, Petitioner asserts that, in determining which employees to furlough, it attempted to select those positions that would cause the least disruption in the provision of services to its clients. Petitioner also alleged that it chose the particular furloughed employees so as to comply with minimum staffing requirements at the facility. Petitioner contends that the Board committed an error of law by failing to consider these policy interests in determining whether Petitioner was obligated to bargain with the Union in the first instance.
Initially, we note that section 701 of PERA provides that "[c]ollective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment. . . ." 43 P.S. §1101.701. In contrast, section 702 of PERA provides in pertinent part:
Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, *121 the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.
43 P.S. §1101.702. In Pennsylvania Labor Relations Board v. State College Area School District, 461 Pa. 494, 337 A.2d 262 (1975), the Pennsylvania Supreme Court addressed the conflict between the above sections of PERA and posited the following test for determining the extent of a public employer's bargaining obligation:
[W]here an item of dispute is a matter of fundamental concern to the employes' interest in wages, hours and other terms and conditions of employment, it is not removed as a matter subject to good faith bargaining under section 701 simply because it may touch upon basic policy. It is the duty of the Board in the first instance and the courts thereafter to determine whether the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole.
461 Pa. at 507, 337 A.2d at 268. Thus, the Board, as well as a reviewing court, must engage in a balancing test of the various competing interests of the public employer and the public employees in order to determine whether a particular issue is subject to bargaining. See Council 13, American Federation of State, County and Municipal Employees, AFL-CIO v. Pennsylvania Labor Relations Board, 84 Pa. Commonwealth Ct. 458, 479 A.2d 683 (1984).
*122 In this case, the Board noted that a public employer's decision to furlough employees for legitimate business reasons, such as lack of funding or reduction in the demand for certain services, is a matter of managerial policy under section 702 of PERA (matters not subject to bargaining). However, the Board concluded that, in the absence of compelling policy reasons, a public employer must bargain with the employees' representative where the furlough of unit employees is coupled with a transfer of the work performed by those employees to employees outside of the bargaining unit. The Board determined that the reasons for the transfer of work in this case "were not `compelling policy reasons' but economic ones." Board's Final Order at 3.
In its appeal to this court, Petitioner contends that the Board failed to utilize the balancing test set forth in State College and instead employed a per se rule in determining whether Petitioner was required to bargain.[5] We recognize that the Board did not specifically reference the State College balancing test in its decision. However, we conclude that the Board properly determined that Petitioner was obligated to bargain over the furloughs and transfer of bargaining unit work. While Petitioner had legitimate reasons for selecting certain employees when making its furlough decisions so as to cause the least disruption in the provision of services, Petitioner's furlough of those employees and re-assignment of their work *123 were clearly matters of fundamental concern to the employees' interest in wages, hours, and other terms and conditions of employment under the State College test. See also Pennsylvania Labor Relations Board v. Mars Area School District, 480 Pa. 295, 389 A.2d 1073 (1978) (school district's unilateral dismissal of teacher aides, who were union members, and substitution of volunteer workers based upon economic reasons constituted unfair labor practice).

EVIDENCE OF BARGAINING
Petitioner next contends that, assuming the Board correctly determined that Petitioner was obligated to bargain with the Union, the Board erred in concluding that Petitioner had not fulfilled its bargaining obligations. Petitioner asserts that the provisions of the collective bargaining agreement indicate that the parties bargained over the issues of furlough and transfer of unit work.[6] In support of its contention that it satisfied its duty to bargain over the transfer of unit work, Petitioner references article 2, section 1 of the parties' agreement, which provides in pertinent part:
It is understood and agreed that the Employer, at its sound discretion, possesses the right . . . to manage all operations, including the direction of the working force. . . . Matters of inherent managerial policy are reserved exclusively to the Employer. These include but shall not be limited to *124 such areas of discretion or policy as the functions and programs of the Employer, standards of service, its overall budget, utilization of technology, the organizational structure, and selection and direction of personnel.
Joint Exhibit No. 1. Petitioner also cites article 28, section 3, which states: "The Union recognizes the right of the Employer to direct its working force, which includes the assignment of work to individual employees and it further recognizes that such assignments may include work outside an employe's classification." Joint Exhibit No. 1.
In this case, the Board concluded that the above-referenced provisions did not clearly establish that the parties bargained about the transfer of unit work. The Board further stated that it would not infer that the Union had waived its right to bargain about the transfers. This court is mindful that the Board possesses administrative expertise in the area of public employee labor relations and that great deference should be given to the Board's assessment of the competing concerns relevant to the question of whether the conduct of an employer or a union constitutes a refusal to bargain in good faith. Minersville Area School District v. Pennsylvania Labor Relations Board, 82 Pa. Commonwealth Ct. 506, 475 A.2d 962 (1984). Accordingly, we will not disturb these conclusions.

PROFFERED TESTIMONY ON BARGAINING HISTORY
Finally, Petitioner asserts that the Board improperly denied its request for a remand to present testimony concerning the parties' bargaining history on the issue of transfer of bargaining unit work.[7] As noted above, Petitioner *125 made an offer of proof at the hearing before the hearing examiner, asserting that one of its witnesses would testify that the Union "has raised, at numerous negotiations, demand that the contract include a provision regarding the transfer of bargaining unit work, and that demand was entertained by the Commonwealth." N.T. at 60. The Union objected to the proffered testimony on the ground that it constituted parol evidence. The hearing examiner sustained the Union's objection, excluding the testimony as not probative of the issues before him. The hearing examiner went on to find that *126 Petitioner satisfied its bargaining obligations, as evidenced by the collective bargaining agreement.
On appeal, the Board determined that the Union had not waived its right to bargain about the transfers by entering into the collective bargaining agreement with Petitioner nor had Petitioner demonstrated that it had otherwise fulfilled its duty to bargain. Board's Final Order at 5. In its motion for reconsideration,[8] Petitioner contended that the testimony which it sought to introduce at the hearing would have established that it otherwise fulfilled its duty to bargain during the negotiation of the contract and that the Union waived its right to further bargain by entering into a contract without a provision relating to transfer of bargaining unit work.
The Board denied Petitioner's motion, holding that Petitioner had not established such extraordinary circumstances to warrant reconsideration. Relying upon Timken Roller Bearing Co. v. National Labor Relations Board, 325 F.2d 746 (6th Cir. 1963), cert. denied, 376 U.S. 971 (1964), and National Labor Relations Board v. Item Co., 220 F.2d 956 (5th Cir. 1955), cert. denied, 350 U.S. 836 (1955), the Board concluded that even if the Union had requested during contract negotiations that a provision governing transfer of bargaining unit work be included in the contract, such request would not be sufficient to establish a clear waiver by the Union of its right to later bargain about the subject.[9] Petitioner argues that these *127 cases are distinguishable because the courts of appeal reviewed the actual negotiations between the parties to determine whether there was an effective waiver of the right to bargain. Petitioner asserts that in this case, it was precluded from presenting any testimony on the bargaining history before the hearing examiner. However, based upon our review of the general language of the zipper clause and Petitioner's offer of proof, we do not believe the Board erred in declining to remand to the hearing examiner for the taking of additional testimony and to then reconsider the Union's charges in light of that testimony.
Accordingly, we affirm.

ORDER
AND NOW, April 13, 1989, the order of the Pennsylvania Labor Relations Board in the above-captioned matter is affirmed.
NOTES
[1] Petitioner filed one document in this court with respect to the Board's final order and denial of reconsideration. While taking one appeal from two adjudications is not acceptable practice, one appeal from more than one final order may be considered on the merits if the circumstances lead the reviewing court to the conclusion that the merits should be reached. See Luzzi v. State Horse Racing Commission, 120 Pa. Commonwealth Ct. 215, 548 A.2d 659 (1988). We conclude that the merits should be reached in this case as we note that no objection has been made by the Union or the Board to the procedure employed by Petitioner.
[2] Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §1101.1201(a). Section 1201(a)(1) provides that it shall be an unfair labor practice for a public employer to interfere, restrain, or coerce employees in the exercise of rights guaranteed in Article IV of PERA. 43 P.S. §1101.1201(a)(1). Section 1201(a)(2) provides that it shall be an unfair labor practice for a public employer to dominate or interfere with the formation, existence, or administration of any employee organization. 43 P.S. §1101.1201(a)(2). Section 1201(a)(3) provides that a public employer commits an unfair labor practice by discriminating as to hire or tenure of employment or any term or condition of employment in order to discourage or encourage membership in any employee organization. 43 P.S. §1101.1201(a)(3). Section 1201(a)(5) provides that a public employer commits an unfair labor practice by refusing to bargain collectively in good faith with the exclusive bargaining representative of employees in an appropriate unit. 43 P.S. §1101.1201(a)(5). Section 1201(a)(9) states that a public employer commits an unfair practice by refusing to comply with the requirements of "meet and discuss." 43 P.S. §1101.1201(a)(9).
[3] This portion of the charge was withdrawn at the hearing held before the hearing examiner. In addition, the Union withdrew its charge that Petitioner had violated section 1201(a)(2) of PERA.
[4] At the hearing before the hearing examiner, Petitioner made an offer of proof concerning the proffered testimony. The Union objected to the admission of the testimony on the ground that such testimony would constitute parol evidence. The hearing examiner sustained the objection, determining that the testimony was not probative of the issues before him. Notes of Testimony at 60-61.
[5] In his PDO, the hearing examiner concluded that the issues of furloughs and the impact of furloughs were bargainable under the balancing test set forth in Pennsylvania Labor Relations Board v. State College School District, 461 Pa. 494, 337 A.2d 262 (1975). We note that Petitioner did not file exceptions to this portion of the hearing examiner's decision. Although exceptions to a hearing examiner's decision not specifically raised are deemed to be waived, 34 Pa. Code §95.98(a)(3), we will nevertheless address Petitioner's contentions concerning its duty to bargain because the Board did consider this issue in ruling upon the Union's exceptions.
[6] Petitioner cites article 30 of the collective bargaining agreement, which delineates employees' seniority rights, recall rights, bumping rights and placement rights, in support of its argument that the parties bargained about the impact of the furloughs. The Board concluded that the language of the collective bargaining agreement did establish that the parties bargained about the furlough procedures, including recall rights. Board's Final Order at 4. Therefore, we need not address this portion of Petitioner's argument.
[7] Petitioner also relies on article 37, section 2 (or "zipper clause") of the collective bargaining agreement, which provides:

The Commonwealth and the Union acknowledge that this Agreement represents the results of collective negotiations between said parties conducted under and in accordance with the provisions of the Public Employe Relations Act and constitutes the entire agreement between the parties for the duration of the life of said Agreement; each party waiving the right to bargain collectively with each other with reference to any other subject, matter, issue, or thing whether specifically covered herein or wholly omitted herefrom and irrespective of whether said subject was mentioned or discussed during the negotiations preceding the execution of this Agreement.
Joint Exhibit No. 1. In Commonwealth v. Pennsylvania Labor Relations Board, 74 Pa. Commonwealth Ct. 1, 459 A.2d 452 (1983), this court upheld the Board's determination that a zipper clause, similar to the above-referenced provision, by itself was not sufficient to excuse a public employer's refusal to bargain. In Commonwealth, based upon the contract language, including a "past practices" clause, we determined that the Board could reasonably conclude that the parties did not intend, by virtue of the zipper clause, to permit unilateral changes in working conditions during the term of the collective bargaining agreement. In reaching this conclusion, we noted that the Board generally construes a zipper clause as a shield, which may be used by either party "to prevent incessant demands during the contract term made by the other party seeking to alter the status quo." Id. at 11, 459 A.2d at 457. The Board does not favor "[u]se of the clause as a sword by one seeking to impose unilateral changes without first bargaining. . . ." Id. at 11, 459 A.2d at 457. See also Commonwealth v. Pennsylvania Labor Relations Board, 82 Pa. Commonwealth Ct. 330, 474 A.2d 1213 (1984) (evidence must be presented to show parties' intent in adopting a waiver clause).
[8] TheBoard will reconsider its decision where a party can establish "extraordinary circumstances." 34 Pa. Code §95.98(g)(2). The decision to grant or deny a request for reconsideration is a matter of administrative discretion and will be reversed by this court only for an abuse of discretion. Keith v. Department of Public Welfare, 121 Pa. Commonwealth Ct. 405, 551 A.2d 333 (1988).
[9] The Board also determined that Petitioner's offer of proof was insufficient, holding that if Petitioner intended to offer the excluded testimony to prove that the parties had entered into an oral agreement in addition to and apart from the written contract, Petitioner should have so stated. Board's Order Denying Reconsideration at 3.