**Cyril H. WECHT, M.D., J.D.
as Coroner of Allegheny
County, Appellant,**

v.

**James RODDEY, as Chief Executive of the County of Allegheny; John DeFazio, as President of the County Council of the County of Allegheny and as representative of the County Council of Allegheny County collectively; the County Council of Allegheny County; and the County of Allegheny.**

**Cyril H. Wecht, M.D., J.D., as Coroner of Allegheny County,**

v.

**James Roddey, as Chief Executive of the County of Allegheny and John Defazio, as President of the County Council of the County of Allegheny and as Representative of the County Council of Allegheny County Collectively,**

**Appeal of David N. Wecht, Esquire.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2002.
Decided Dec. 31, 2002.

---

Timothy G. Uhrich, Pittsburgh, for appellant, C. Wecht, M.D., J.D.

Bonnie Brimmeier, Pittsburgh, for appellant, D. Wecht, Esq.

George M. Janocsko, Pittsburgh, for appellees.

BEFORE: COLINS, President Judge, LEADBETTER, Judge, COHN, Judge, SIMPSON, Judge, LEAVITT, Judge.

OPINION BY Judge SIMPSON.

The Coroner of Allegheny County questions whether Allegheny County, whose government recently reorganized under the Second Class County Charter Law[1] (Enabling Law) as a home rule county, has authority to bind his office under an Administrative Code, or whether that power remains with the General Assembly under the Second Class County Code.[2] Specifically, Cyril H. Wecht, Coroner of Allegheny County (Coroner), appeals from the Order of the Allegheny County Court of Common Pleas (trial court) which denied and dismissed his action for declaratory judgment against James Roddey, Chief Executive of Allegheny County, John DeFazio, President of County Council of Allegheny County, County Council of Allegheny County, and the County of Allegheny (Allegheny County).

The facts are not in dispute, having been established through a joint stipulation of facts. By way of briefest summary, after a referendum permitted by the Enabling

---

1. Second Class County Charter Law, Act of July 28, 1953, P.L. 723, *added by* the Act of May 20, 1997, P.L. 149, *as amended,* 16 P.S. §§ 6101–C—6106–C, expired January 3, 2000.

2. Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended,* 16 P.S. §§ 3101–5106–A (Second Class County Code).

Law, the new Allegheny County Home Rule Charter went into effect on January 1, 2000.[3] As required by the Home Rule Charter, Allegheny County adopted an Administrative Code during June, 2000. The Code provisions in question are:

§ 601.01, providing that all Independently Elected Officials devote a full-time effort to the duties of their offices, "full-time" is defined at Section 101.03 of Article I of the Administrative Code to mean regular work of at least thirty-five hours a week;

§ 601.02, providing that all Independently Elected Officials establish and publish criteria for merit hiring and promoting within their respective offices;

§ 601.04, providing that all Independently Elected Officials abide by the accountability, conduct and ethics code set forth under the Administrative Code;

§ 601.04A, providing that each Independently Elected Official shall abide by the Management Information Systems procedures in place for county services and operations; and

§ 601.04B, providing that each Independently Elected Official submit a semiannual report to the Chief Executive and County Council detailing any material changes to the administration or operation of their office.

Shortly thereafter, the Coroner, an independently elected official, filed suit seeking a declaration that "the exercise of power and control over the Coroner of Allegheny County by the Defendants through an Administrative Code is constitutionally impermissible and violative of Article 9 Section 4 of the Pennsylvania Constitution ... [and] contravenes the Second Class County Charter Law, in that the duties and functions of the Office of the Coroner are fully set forth in the Second Class County Code...." Amended Action for Declaratory Judgment, demand for relief. Reproduced Record (R.R.) at 68b–69b.

Ultimately, the merits were addressed to the Honorable Joseph James, Administrative Judge of the Civil Division. After hearing and receipt of the joint stipulation of facts, he declared that the Administrative Code provisions in question do not conflict with any provision of the Constitution of Pennsylvania, an act of the General Assembly or the Home Rule Charter itself and that, therefore, the Administrative Code represents a valid exercise of power. Accordingly, the trial court dismissed the Coroner's action. This appeal followed.

A day after the Coroner filed a notice of appeal, David N. Wecht, the Allegheny County Register of Wills and Clerk of Orphans' Court (Register of Wills), also an independently elected official, filed a petition seeking to intervene in the Coroner's case. On the same day, the trial court denied the petition to intervene, reasoning that because a final Order had been entered, the action was no longer pending within the meaning of the rule permitting intervention. The Register of Wills appealed.

■ This Court's review is limited to a determination of whether the trial court committed legal error and whether the findings were supported by the evidence. *In re Appointment of Dist. Attorney*, 756 A.2d 711 (Pa.Cmwlth.2000).

## I. Coroner

The Coroner contends that the function of his office is controlled by the Second Class County Code, not the home rule

---

3. The Charter Law expired on January 3, 2000, upon the assumption of office by the Chief Executive and the County Council.

Administrative Code for Allegheny County. In particular, he argues that the Enabling Law does not specifically address the Office of Coroner. Because only the Second Class County Code addresses the Office of Coroner, only the Second Class County Code controls the function of that office.

### A.

■ Initially, Allegheny County argued that the matter was not ripe for adjudication because neither the accountability, conduct and ethics code nor the management information system was in place. Moreover, we note that by stipulated fact the Coroner currently maintains full-time effort and a merit-based system for hiring and advancement in compliance with the Administrative Code.

■ The granting of a petition for declaratory judgment under the Declaratory Judgments Act[4] is a matter lying within the sound discretion of a court of original jurisdiction. *Gmerek v. State Ethics Comm'n*, 751 A.2d 1241 (Pa.Cmwlth.2000), *aff'd*, 569 Pa. 579, 807 A.2d 812 (2002). The act is remedial. 42 Pa.C.S. § 7541. Its purpose is to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered. *Id.* Nevertheless, declaratory judgment is not appropriate to determine rights in anticipation of events which may never occur but is appropriate where there is imminent and inevitable litigation. *Silo v. Ridge*, 728 A.2d 394 (Pa.Cmwlth.1999). Without an actual imminent or inevitable controversy, a party lacks standing to maintain a declaratory judgment action. *Id.*

Here, we find no error in the trial court's review. Although imminent viola-

tion of the Administrative Code by the Coroner is not manifest, this record clearly establishes the inevitability of litigation. *See* R.R. at 47b–51b. The Coroner's forceful public contention that only the state legislature and not the home rule county government was authorized to administer his office represents the ripening seeds of a controversy sufficient to support judicial review. *Clark, Inc. v. Hamilton Township*, 128 Pa.Cmwlth. 31, 562 A.2d 965 (1989). Thus, judicial review furthers the General Assembly's intent to provide relief from uncertainty and insecurity and is consistent with the legislative direction for liberal construction of this statutory remedy.

### B.

Article 9, Section 2 of the Pennsylvania Constitution declares in part:

A municipality which has adopted a home rule charter may exercise any power and perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.

Therefore, under this constitutional provision our inquiry is whether any exercise of power has been denied by the Constitution, by the Allegheny County home rule charter or by an Act of the General Assembly.

■ Consistent with this constitutional guidance, the General Assembly enacted the Home Rule Charter and Optional Plans Law (HRC & OPL), 53 Pa.C.S. §§ 2901–3171. The HRC & OPL provides in pertinent part:

A municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylva-

4. 42 Pa.C.S. §§ 7532–7551.

nia, by statute or by its home rule charter. All grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality.

53 Pa.C.S. § 2961. "Thus, a presumption exists 'that the exercise [of power] is valid if no restriction is found in the Constitution, the charter itself, or the acts of the General Assembly.'" *Fraternal Order of Police, Fort Pitt Lodge No. 1 v. City of Pittsburgh,* 165 Pa.Cmwlth. 83, 644 A.2d 246, 249 (1994), quoting *Norristown Fraternal Order of Police, Lodge 31 v. DeAngelis,* 148 Pa.Cmwlth. 285, 611 A.2d 322, 326 (1992).

Of particular significance is the nature of the restriction which will limit a home rule municipality's exercise of authority. In *In re Appointment of Dist. Attorney,* 756 A.2d 711 (Pa.Cmwlth.2000), we concluded that, where a home rule charter was in direct conflict with a provision of the Election Code pertaining to the length of an interim appointment, the state statute would prevail. Thus, we look for direct conflict between the home rule enactment and the Constitution, the home rule charter, or the statute.

### C.

■ The Coroner contends that the Administrative Code provisions which mandate independently elected officials to work full-time and to abide by the accountability, conduct and ethics code violates Article 9, Section 4 of the Pennsylvania Constitution. That constitutional provision states in part (with emphasis added):

§ 4. County government

County officers shall consist of commissioners, controllers or auditors, district attorneys, public defenders, treasurers, sheriffs, registers of wills, recorders of deeds, prothonotaries, clerks of the courts, and such others as may from time to time be provided by law.

. . .

*Provisions for county government in this section shall apply to every county except a county which has adopted a home rule charter or an optional form of government.* One of the optional forms of county government provided by law shall include the provisions of this section.

Obviously, the provisions of Section 4 do not apply where the county has adopted a home rule charter or an optional form of government. Accordingly, by its terms, Article 9, Section 4 does not conflict with an enactment of a home rule municipality, including Allegheny County. The Coroner's averments to the contrary lack merit.

### D.

■ The Coroner also contends that certain provisions of the Enabling Law prohibit the exercise of home rule authority attempted by Allegheny County in its new Administrative Code. Specifically, the Coroner contends that Section 3 of the Enabling Law contains a limitation that precludes the exercise of power and control over the Office of the Coroner:

(i) No county shall:

. . .

(3) Be given the power to diminish the rights or privileges of any former employe entitled to benefits or any present employe in that former or present employe's pension or retirement system.

16 P.S. § 6107–C(i)(3). *See* Amended Action for Declaratory Judgment, paragraph 21. Clearly, the prohibition against a home rule county's diminishing rights in an employee's pension or retirement system does not directly conflict with the full-time effort and accountability provisions

applicable to the Coroner under the new Allegheny County Administrative Code. The Coroner's averments on this issue lack merit.

Although not referenced in his pleadings, the Coroner argues that another limitation in Section 3 of the Enabling Law precludes the exercise of home rule authority over the Office of Coroner here. In particular, the Coroner seems to rely on the following limitation in the Enabling Law:

> (j) *Acts of the General Assembly* in effect on the effective date of this article that are uniform and *applicable in every part of this Commonwealth shall remain in effect and shall not be changed or modified by this article.* Acts of the General Assembly enacted after the effective date of this article that are uniform and applicable in every part of this Commonwealth shall supersede any ordinance or resolution on the same subject.

16 P.S. § 6107 C(j) (emphasis added). The Coroner argues that the powers and duties of the Allegheny Coroner are set forth generally in Article XII of the Second Class County Code. 16 P.S. §§ 4231–4262. The Coroner suggests that the General Assembly intended to preempt the field on all matters addressed in the Second Class County Code, thereby precluding any action on the part of a home rule county in these areas.

■ This argument lacks merit for several reasons. First, there is no direct conflict between any provision of the Second Class County Code and Allegheny County's home rule Administrative Code. As correctly noted by the trial court, no provision of the Second Class County Code addresses a coroner's responsibility for full-time effort, accountability and ethics, merit hiring and promoting, cooperation with management information systems, or periodic reporting to county officials. In the absence of direct conflict, the presumption of home rule validity prevails. *See In re Appointment of Dist. Attorney; Fort Pitt Lodge No. 1*, 644 A.2d 246; 53 Pa.C.S. § 2961.

■ Second, the Coroner's contention misapprehends the effect of home rule authority. In general, the adoption of a home rule charter acts to remove a municipality from the operation of the code provisions enumerating the powers of that particular class of municipality. *County of Del. v. Township of Middletown*, 511 Pa. 66, 70, 511 A.2d 811, 813 (1986). Thus, in the absence of explicit constraint or collateral effect on another municipality, there will be no conflict between the home rule municipality's actions and the former code provisions, since the latter no longer apply.

Third, Section 102 of the Second Class County Code, applicable to all counties of the Second Class and Second Class A, 16 P.S. § 3102, is not an act of the General Assembly "applicable in every part of this Commonwealth" so as to come within the Enabling Law limitation. So, the Second Class County Code does not apply in Philadelphia, a county of the first class, nor does it apply in the 62 counties of the third through eighth class. *See* Section 210 of the Second Class County Code, 16 P.S. § 3210; *Fort Pitt Lodge No. 1.* (where statute did not apply in every part of the Commonwealth, Pittsburgh's home rule city ordinance was not limited thereby).

Thus, there is no error in the trial court's conclusion that Allegheny County's home rule Administrative Code does not conflict with the Second Class County Code.

### E.

The Coroner's additional arguments are easily addressed. The Coroner contends

that because the Enabling Law does not specifically refer to the Office of Coroner and only the Second Class County Code refers to that position, only the latter controls the office. As noted previously, a presumption exists that the exercise of home rule power is valid if no restriction is found. Because enactments will be construed in favor of the exercise of home rule authority, the absence of specific reference to the Coroner in the Enabling Law is not equivalent to a specific limitation which dispels the presumption of validity.

Similarly, the Coroner's reliance on *In re Appointment of Dist. Attorney* is misplaced. In that case, a direct and specific conflict existed between the Lackawanna County Home Rule Charter and the Election Code, a statute applicable in every part of the Commonwealth. In the absence of such a direct conflict, *In re Appointment of Dist. Attorney* does not control.

## II. Register of Wills

▆▆▆ The Register of Wills contends that the trial court erred by denying his petition to intervene and by failing to hold a hearing. In response to the trial court's conclusion that his petition to intervene was filed too late because it came after the dispositive Order, the Register of Wills claims he neither knew nor had reason to know that the trial court would refer to all independently elected officials in its decision.

Pa. R.C.P. No. 2327 provides in pertinent part as follows (with emphasis added):

Rule 2327. Who May Intervene

*At any time during the pendency of an action,* a person not a party thereto shall be permitted to intervene therein, subject to these rules if

. . .

. . .

(3) such person could have joined as an original party in the action or could have been joined therein; or

(4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Instructive is the case of *Estate of Albright,* 376 Pa.Super. 201, 545 A.2d 896 (1988). In that case, the Orphans' Court assessed a surcharge against a law firm. Various proceedings ensued. Ultimately, exceptions to the surcharge were dismissed. That day, a law firm with similar named partners sought to intervene, but the petition to intervene was denied without hearing. Our Superior Court affirmed, stating that, "To petition the court to intervene after a matter has been finally resolved is not allowed by the Rules of Civil Procedure. It is only *during the pendency* of an action that the court may allow intervention." *Id.* at 899 (emphasis in the original). Further, the Court stated:

Especially where the party proposing its intervention has had ample notice and opportunity to protect its interests earlier, to allow intervention at such a late day would unduly prejudice the interests of a party in whose favor the matter has been resolved. Pa.R.C.P. 2329(3); *accord, Jackson v. Hendrick,* 498 Pa. 270, 446 A.2d 226 (1982).

*Id.*

Here, as in *Estate of Albright,* when the trial court issued its Order, the matter was no longer pending. At that point, intervention was not available for the Register of Wills.

Furthermore, the Register of Wills' contention that he did not know and could not have known that the trial court would refer to all independently elected officials is

unpersuasive at best. The enactment of Allegheny County's home rule Administrative Code was a matter of great notoriety. The Administrative Code provisions contested by the Coroner specifically referenced independently elected officials. Under these circumstances, it was foreseeable that the trial court would refer to independently elected officials in its disposition.

Because neither the rules nor interpretive case law support intervention, we find no error in the trial court's Order dismissing the petition to intervene without hearing.

Judge SMITH–RIBNER and Judge PELLEGRINI did not take part in the decision in this case.

### ORDER

AND NOW, this 31st day of December, 2002, the Orders dismissing the action for declaratory relief and denying the petition to intervene are affirmed.

DISSENTING OPINION BY President Judge COLINS.

I dissent because I agree with Allegheny County Coroner Wecht that the exercise of power and control over the county coroner through an administrative code violates the Constitution and the Second Class County Code. The coroner is a constitutionally established county officer with statutory powers and duties that are fairly uniform throughout the Commonwealth regardless of the class of county. The administrative code provisions as they relate to county officers constitute a prohibited exercise of power in limitation of powers granted by statutes of general application. 53 Pa.C.S. § 2962(c)(2).